**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

IVORY ROBINSON,
ADC # 111822                                                                                                    **PLAINTIFF**

V.                                        5:10-cv-00013-JMM-JJV

J. T. ADAMS, Major, Arkansas
Department of Correction; *et al.*                                                                **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 500 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

Plaintiff, Ivory Robinson, filed a *pro se* Complaint (Doc. No. 2) on January 19, 2010, pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments. Plaintiff made a timely demand for a jury trial; however, before incurring the expense and manpower inherent in such a trial, the Court held a pre-jury evidentiary hearing on August 24, 2010, to determine whether Mr. Robinson's claims warranted a jury trial. *Johnson v. Bi-State Justice Center*, 12 F.3d 133, 135 (8th Cir. 1993).

Prior to the hearing, Defendants filed a Motion for Summary Judgment, supporting Brief and Statement of Facts (Doc. Nos. 37, 38, 39). Plaintiff filed a Response in Opposition (Doc. No. 49).

The matter is, therefore, ready for a decision. In considering the merits of this matter, the Court has carefully considered the testimony from the pre-jury evidentiary hearing, the pleadings, and the evidence in support of the pleadings. The significant facts are generally not in dispute and the Court makes no credibility findings in rendering its decision. Based on careful review of the information before the Court in this matter, it is recommended that Defendants' Motion for Summary Judgment be GRANTED.

**I.     MOTION FOR SUMMARY JUDGMENT**

    **A.     Standard of Review**

Pursuant to FED. R. CIV. P. 56(c), "[s]ummary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County*, 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id.*

    **B.     Background**

The events of this case were set in motion on the morning of October 1, 2008, when Mr. Robinson slapped a correctional officer. (Doc. No. 74, Pl.'s Dep. at 31-34.) Presuming retaliation for striking a guard, Mr. Robinson says he saw a jailer spit in his food tray as it was delivered to him in his isolation cell. *Id.* at 35-36. Mr. Robinson reported this to Sgt. Eason, but Eason would not investigate the claim. *Id.* at 37.

Angered by Sgt. Eason's unwillingness to investigate his claim, Plaintiff started a fire in his cell. *Id.* at 38. Jailers extinguished the fire and brought Mr. Robinson to the infirmary to ensure he

was not injured by the fire. *Id.* at 39.

After his release from the infirmary, Mr. Robinson was sent to Major Adams's office. (Doc. No. 74, Pl.'s Dep. at 39.)  Major Adams asked Robinson why he started the fire.  Mr. Robinson responded that Defendant Burton had spit in his food.  Robinson asked if he could have the tray examined to prove he was not lying; Major Adams refused.  Mr. Robinson did not like this and asked to speak with the Deputy Warden, but his request was denied. *Id.* at 39-40.

Robinson was sent back to his cell in isolation.  Shortly thereafter, Sgt. Eason was performing a security check and Mr. Robinson requested that she call the Deputy Warden.  She refused and Mr. Robinson started another fire in his cell so he could talk to the Deputy Warden. *Id.* at 41. Jailers again extinguished the fire and brought Mr. Robinson to the infirmary to ensure he was not injured. *Id.* at 39.

Once again, Mr. Robinson was sent to Major Adams' office where he stated that he set the fire because no one would allow him to talk to the Deputy Warden.  Major Adams began questioning Mr. Robinson, who refused to answer any questions.  Major Adams radioed Sgt. Eason and notified her that Robinson was being on placed on behavior control status. *Id.* at 49.  As part of behavior control, jailers removed all of Plaintiff's belongings and sent him to the shower. *Id.*  Robinson stated that while in the shower, he threw a bar of soap at Defendant Burton. *Id.* at 49-50.

After his shower, Plaintiff stated, "[B]efore I was placed back in my cell, they removed my jump suit and everything else that I had in my possession, socks, shower shoes, and left me with nothing but a pair of boxers, then [they] place[d] me back into the cell." *Id.*  Sometime after guards placed Plaintiff back in his cell, Defendant Burton turned off the water to the cell. *Id.* at 51-55. Inside the cell was a dinner tray containing "protein, whatever veggie, a drink and a piece of bread." *Id.* at 57.

4

Around midnight on October 2, 2008, Plaintiff spoke with Capt. Mike who was performing a security check. Robinson asked her about his status and whether he could have a blanket. Capt. Mike responded, "the Major told [us] not to give [you] nothing." (Doc. No. 74, Pl.'s Dep. at 60.)

Mr. Robinson stated that after jailers shut off the water to his cell, he had no water to drink except the water from the toilet. *Id.* at 64-65. He further stated that, because jailers were not flushing the toilet, the toilet water had "urine and feces in it." *Id.* Plaintiff says, as a result of drinking water from his toilet, he began having chest pains and had to be taken to the infirmary. After examination, the medical staff found nothing wrong with Mr. Robinson. *Id.* at 67.

Guards escorted Mr. Robinson back to his cell. Inside his cell, jailers removed one hand from the cuffs but Robinson pulled the other hand free with the cuff still around his wrist and refused to return the cuffs to jailers. *Id.* at 68. In response to this new incident, jailers requested assistance from Capt. Davis. Davis told Robinson that he would investigate the reason Robinson was placed on behavior control status and get back with him later that day. When asked for the cuffs, Robinson said he would not give it back until his things were returned and he had some answers. (Pre-Jury Hrg. R., Aug. 2010.) The extraction team was called and Mr. Robinson eventually complied with their orders and returned the cuffs. *Id.* During this incident, Mr. Robinson admits he threw feces at the jailers. (Doc. No. 74, Pl.'s Dep. at 70-71.) On October 6, 2008, Mr. Robinson's water was restored.

**C.     Analysis**

Mr. Robinson's Complaint sets forth allegations of cruel and unusual punishment under the Eighth Amendment and violations of due process under the Fourteenth Amendment. His Complaint and the testimony at the pre-jury hearing center around his claims of cruel and unusual punishment resulting from placement on behavior control status and the denial of access to water.

### 1. Official Capacity Claims

Mr. Robinson seeks to sue Defendants in both their official and individual capacities. His official capacity claims against Defendants must be dismissed as the Eleventh Amendment bars suit against the State and therefore neither the State nor its officials acting in their official capacity are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

### 2. Eighth Amendment Claim

Mr. Robinson claims he was subjected to cruel and unusual punishment because he was placed on behavior control status where he was deprived of a mattress, hygiene products, towels, sheets, blankets, clothing (except boxer shorts), and running water. (Doc. No. 2.)

Conditions of confinement and the treatment of prisoners are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "To make out an Eighth Amendment violation a plaintiff must show a serious deprivation of 'the minimal civilized measure of life's necessities' and 'offending conduct [that is] wanton.'" *Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir. 1999) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1994)).

The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and that reasonable measures are taken to ensure the safety of the inmates. *Farmer*, 511 U.S. at 832-33. Prison conditions will violate the Eighth Amendment only when they "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). The "Constitution does not mandate comfortable prisons" but it does prohibit "inhumane ones." *Farmer*, 511 U.S. at 832-33.

To prevail on his Eighth Amendment claim, Robinson must make both an objective and subjective showing. *Id*. at 836. He must show: "(1) the alleged deprivation is, 'objectively, sufficiently serious,' resulting 'in the denial of the minimal civilized measure of life's necessities,'

and (2) the prison officials were deliberately indifferent to 'an excessive risk to inmate health or safety,' meaning that the officials actually knew of and disregarded the risk." *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994)).

The subjective component "requires proof of a reckless disregard of a known risk." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and unusual 'punishments.'" *Id.*

The Court finds the holding in *Williams v. Delo*, 49 F.3d 442 (8th Cir. 1995), to be helpful. Williams was placed in the strip cell after attacking his wife in the prison visiting room and continuing to display aggressive behavior towards prison guards. *Id.* at 444. In the strip cell, Williams was forced to remove all of his clothing. *Id.* The strip cell had a light, toilet, and sink, but the mattress had been removed and the water had been shut off. *Id.* Because the water had been shut off, Williams could not flush the toilet or wash his hands. *Id.* Williams repeatedly asked that the water be turned on and for a tooth brush, toothpaste, deodorant, soap, sheets, blankets, pillow cases, pillow, mattress, legal mail, and clothing; all were denied. *Id.* Williams experienced these conditions of confinement for four days. *Id.*

Williams alleged that "the conditions he encountered while confined in the strip cell constituted cruel and unusual punishment because they resulted in physical injury and substantial pain, misery, anguish, and other similar harm." *Id.* at 444. The United States Court of Appeals for

the Eighth Circuit concluded that "Williams failed to present any evidence tending to establish that the conditions in the strip cell denied him the 'minimal civilized measure of life's necessities.'" *Id*. at 445. The court recognized its longstanding precedent that "there is no absolute Eighth Amendment right not be put in a cell without clothes or bedding." *Id*. at 446 (citing *Johnson v. Boreani*, 946 F.2d 67, 71 (8th Cir. 1991)). The court further stated that "[n]othing in the record indicates that Williams suffered any injuries or that his health was impaired as a result of his four-day confinement in the strip cell. At most, Williams's evidence shows only that he felt some discomfort." *Id*.[1]

          a.      **Deprivation of mattress, hygiene products, towels, sheets, blankets, clothing (except boxer shorts), and running water.**

In this case, Mr. Robinson has failed to prove his placement on behavior control status, without mattress, hygiene products, towels, sheets, blankets, clothing, and running water in his cell, denied him the minimal civilized measure of life's necessities. Mr. Robinson was on behavior control from October 1, 2008, through October 8, 2008, and his water was shut off from October 1, 2008, until October 6, 2008.[2] However, during these days, Mr. Robinson was given three meals a day, four showers, and adequate shelter.

In bringing forth these claims, Mr. Robinson refuses to acknowledge the reasons he was without the the items about which he now complains. The jailers removed these items in direct

---

[1] *See also O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82 (8th Cir. 1996) (finding that several days without underwear, mattress, blankets, or exercise did not violate the Eighth Amendment); *Seltzer-Bey v. Delo*, 66 F.3d 961, 963 (8th Cir. 1995) (finding no Eighth Amendment violation when inmate was placed in "strip cell" for two days without clothing, bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing on him).

[2] *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding that the duration of the alleged inhumane conditions is a "critical factor" in determining whether a constitutional violation has occurred).

response to Plaintiff assaulting a guard, twice setting fire to his cell, throwing soap at a guard, taking a set of handcuffs from jailers, and throwing feces at jailers.

Moreover, Plaintiff suffered no injury as a result of his conditions of confinement. Plaintiff testified that he experienced some chest pains but he has no evidence of any injury whatsoever. The prison medical staff examined Plaintiff and found nothing. Therefore, just as in *Williams*, at most, Mr. Robinson has established he felt discomfort.

### b. Deprivation of drinking water.

The Court is concerned that it appears Mr. Robinson was not given drinking water for five days.[3] As stated above, for Mr. Robinson to prevail on his Eighth Amendment claim, he is required to make an objective showing that he was deprived the minimal civilized measure of life's necessities, and he must make a subjective showing that the prison officials were deliberately indifferent to an excessive risk to his health.

The Court finds Mr. Robinson has provided evidence that he was deprived of a minimal civilized measure of life's necessities when he was not given water to drink with his meals for five days. However, given the evidence before the Court, Plaintiff cannot make an adequate showing that prison officials acted with deliberate indifference to an excessive risk to his health. As discussed above, Defendants acted in response to Mr. Robinson's own assaultive and destructive

---

[3]While there remains a question as to whether Mr. Robinson was actually denied access to water during his meals, the Court, in viewing the facts in the light most favorable to the non-moving party, finds that Mr. Robinson was denied access to water during his meals. Defendants argue that Plaintiff admitted in his deposition he received drinks with meals. After review of the deposition testimony, it appears Plaintiff was describing meals *generally*. (Doc. No. 74, Pl.'s Dep. at 56-58). Plaintiff's testimony is corroborated by the fact he filed a grievance about not receiving water during this time period and the grievance response states: "I have reviewed your grievance dated 10/05/2008. Corrective action has been taken in regards to the incident in question. Staff has been reminded of the importance that inmates receive water while on 'Behavior Control.'" (Doc. No. 50, p. 12.)

behavior, including throwing feces on the guards. An inmate choosing to throw feces on the guards is routinely denied access to cups, including cups used to serve drinks during mealtime.

Furthermore, Mr. Robinson was given access to water in the showers. He states that he received showers approximately four times. (Doc. No. 74, Pl.'s Dep. at p. 72)

Because Defendants' response was directly related to Mr. Robinson's actions, the Court finds Mr. Robinson cannot establish subjectively that Defendants were deliberately indifferent to him. Additionally, Plaintiff suffered no injury as a result of drinking water from his toilet.

Nevertheless, the Court does believe the denial of drinking water makes this case a close call. Conditions of confinement claims must be analyzed viewing the totality of the circumstances. *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989). Denying an inmate drinking water may likely result in a constitutional violation. However, in this particular case, given the totality of the circumstances, the Court finds that the ADC officers were not deliberately indifferent to the risk of harm posed to Mr. Robinson by denying him water.

Furthermore, in giving Plaintiff's claims full attention, the Court has also analyzed his claims in an excessive force context.

> Where a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'

*Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "A challenge to the way in which prison officials respond to a disturbance must show that they acted 'maliciously and sadistically for the very purpose of causing harm.'" *Key v. McKinney,* 176 F.3d 1083, 1086 (8th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

Again, the evidence shows that Defendants were only responding to Mr. Robinson's actions that were posing a significant risk to the safety of prison staff, other inmates and the facilities. Mr. Robinson had proven that his escalating out of control behavior required swift and decisive action. That action was his placement on behavior control, and it was not applied sadistically or maliciously. Rather, Defendants were attempting to stop Mr. Robinson from committing further assaults or acts of destruction.

### c.     Fourteenth Amendment Claim

The Fourteenth Amendment prohibits the deprivation of life, liberty, or property without due process of law. Constitutional protections, which are encompassed by the due process clause, do not abate at the time of imprisonment. *Hudson v. Palmer*, 468 U.S. 517, 539 (1984). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (citations omitted).

In order to maintain an actionable procedural due process claim, an inmate must show he has been deprived of some constitutionally protected liberty or property interest. *See Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) ("A due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In prisoner cases, a constitutionally protected liberty interest will arise only when the prisoner can show that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," as contemplated in *Sandin*, 515 U.S. at 484 (holding that disciplinary segregated confinement of an inmate falls within expected parameters of prison life, and does not represent an "atypical and significant hardship," which would create a protected liberty interest).

From reviewing the Complaint, it appears Plaintiff is arguing that because the prison's policy

and procedure of placing him on behavior control status was not followed, he was denied due process of law. However, Mr. Robinson has no liberty interest in the Defendants following prison policy or procedure. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 1996) (holding "there is no federal constitutional liberty interest in having . . . prison officials follow prison regulations"). Furthermore, Mr. Robinson fails to establish that his placement on behavior control status resulted in an atypical and significant hardship. It was Mr. Robinson's continuous reckless behavior which resulted in his placement on behavior control status.

## IV.  CONCLUSION

IT IS THEREFORE RECOMMENDED that:

1. Defendant's Motion for Summary Judgment (Doc. No. 37) be GRANTED;

2. Plaintiff's Eighth and Fourteenth Amendment claims should be DISMISSED with prejudice; and

3. All pending motions be denied as moot.

DATED this 9th day of November, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE